IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PHILADELPHIA MACARONI COMPANY :    CIVIL ACTION
                                      :    NO. 09-2460
        Plaintiff,          :
                                        :
        v.                      :
                                        :
ITALPASTA LIMITED,            :
                                        :
        Defendant.          :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        April 20, 2010


       Presently before the Court is the motion to dismiss
for lack of personal jurisdiction filed by Defendant Italpasta
Limited.  For the reasons stated herein, the Court concludes that
the exercise of specific jurisdiction is proper under the
circumstances of this case, therefore the motion will be denied.


I.    **BACKGROUND**

       This action arises from a dispute over a master supply
order entered into by and between Plaintiff Philadelphia Macaroni
Company ("PMC") and Defendant Italpasta Limited ("Italpasta")
concerning the delivery of flour to Italpasta.  PMC is
incorporated under the laws of Pennsylvania and operates a wheat
milling plant in Minot, North Dakota under the registered
business name Minot Milling ("Minot").  Italpasta is a Canadian
company located in Brampton, Ontario and produces and sells pasta

products.

The exact origin of the parties' business relationship is disputed, however, both PMC and Italpasta agree that the initial contact between the companies was in 1998.[1] PMC alleges that Joe Vitale ("Vitale"), Italpasta's President, placed a phone call to James Streetar ("Streetar"), then-President of Minot, at some time in 1998. Italpasta counters that Streetar made the initial call to Italpasta to inquire about potentially selling flour to Italpasta. Italpasta claims that Streetar was its exclusive business contact for Minot until the time of his retirement at the end of 2008.

Regardless of how the parties' relationship began, both parties agree that during the period from 1998 until 2008, Italpasta and PMC (through Minot) entered into a series of master orders for the sale of large quantities of flour. After the parties completed negotiations with respect to price, quantity and a time frame for delivery, Streetar would memorialize these terms in his office in Minnesota and send copies to Vitale in Canada. Vitale would then return a signed copy of the master order to Streetar, at which point Streetar would inform PMC in Philadelphia of the relevant terms of the new agreement. In September 2005, Minot began the practice of including an

_____

[1] Italpasta alleges that the initial contact between the parties was in December 1998, whereas PMC alleges that the contact occurred in 1998 without specifying an exact month.

-2-

expiration date in the terms of the master orders. (Vitale Dec. ¶¶ 22-23.)

Streetar arranged for the product covered by a relevant master order to be stored at a rail terminal in Guelph, Ontario. Italpasta would then contact the rail transfer station to request that a particular quantity of truckloads of flour be delivered to Italpasta's facility by Polymer Distribution, Inc. ("Polymer"). Streetar would monitor the inventory levels at the rail transfer station to ensure that sufficient flour was available to satisfy the relevant master order. When the full quantity of flour under a master order was delivered, the parties would negotiate a new master order for future purchases. In essence, each master order would provide that a particular amount of flour would be available at the transfer station at Italpasta's request, and upon depletion of that inventory, the parties would negotiate a replacement master order in accordance with the fluctuation in the price of wheat.

PMC claims that during the parties' ten-year relationship, Italpasta would occasionally telephone PMC's employees in Philadelphia concerning invoices and billing. PMC further asserts that Italpasta paid for its purchases by mailing checks to PMC's Philadelphia office.

Independent of its dealings with PMC, Italpasta utilizes independent sales brokers in order to distribute its

products throughout the United States.  (Fiorelli Dec. ¶ 9.)
Since 2000, Italpasta has engaged in sales of its pasta products
to customers in Pennsylvania totaling over $5.6 million, which
amounts to 0.76% of its gross sales for that period.  (Id. ¶ 6.)
In 2008 and 2009, Italpasta's total sales in Pennsylvania were
$263,453 (.023% of gross sales) and $7,287 (.01% of gross sales),
respectively.  (Id. ¶¶ 7-8.)

On March 25, 2008, the parties entered into master
order number 1545 ("MD 1545"), pursuant to which Minot was
required to ship 100,000 hundred weight units (CWT) of ward
seminola flour.  MD 1545 covered the draw-down period of June 1,
2008 to August 30, 2008.  The crux of the instant litigation is
whether PMC (through Minot) timely delivered the flour to
Italpasta's Ontario facility in accordance with the terms and
conditions of MD 1545.  PMC claims that it continually supplied
flour to Italpasta according to its inventory needs, but that
Italpasta did not finish drawing down on the previous master
order, master order 1512 ("MD 1512"), until after August 2008.
PMC claims that once Italpasta exhausted the available supply
under MD 1512, it sought to draw on the supply provided by MD
1545, but that by this time wheat prices had dropped and
Italpasta then sought to procure flour under more favorable
terms, thereby breaching MD 1545.  Italpasta counters that PMC is
in breach of MD 1545 because no shipments of flour were delivered

pursuant to MD 1545 until after the August 30, 2008 expiration date, and that Italpasta received limited shipments under MD 1545 only until October 2, 2008.

On June 2, 2009, Italpasta filed an action in the Ontario Superior Court of Justice against PMC alleging a breach of contract.  See Italpasta Limited v. Philadelphia Macaroni Company, CV-09-379-996 (the "Canadian Litigation").  The Canadian Litigation was filed four days after the instant case.  It encompasses the identical claim that is before this Court.  PMC filed a Notice of Intent to Defend in the Canadian Litigation, and PMC does not argue that it will not participate in the Canadian Litigation or contest jurisdiction in Canada.  Italpasta contends that it was unaware of the instant proceeding at the time it commenced the Canadian Litigation.  The pleadings have closed in the Canadian Litigation and discovery is underway.

On October 5, 2009, the Court held a hearing on Italpasta's motion to dismiss.  Thereafter, the Court granted the parties leave to conduct jurisdictional discovery and file supplemental briefs with respect to the question of jurisdiction. The Court held a subsequent evidentiary hearing on April 14, 2010 at which the parties relied upon affidavits and deposition testimony.  No live testimony was offered.  The motion to dismiss is now ripe for adjudication.

## II. APPLICABLE LAW

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 4(e) authorizes a district court to exercise personal jurisdiction "over non-resident defendants to the extent permissible under the law of the state where the district court sits." Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (internal citation omitted). Thus, the relevant starting point for the Court's analysis is Pennsylvania's long-arm statute, 42 Pa. C.S. § 5322(b). This statute permits Pennsylvania courts, and by extension this Court, "to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment." Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992); see 42 Pa. C.S. § 5322(b) ("[T]he jurisdiction of the tribunals of this Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contacts with this Commonwealth allowed under the Constitution of the United States.").

Since Pennsylvania's long-arm statute is coextensive with the due process limitations of the federal Constitution, the focal point of the Court's inquiry is whether the exercise of personal jurisdiction is consistent with the well-established constitutional standard of a non-resident defendant having

"certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Marten v. Finchuam, 499 F.3d 290, 296 (3d Cir. 2007) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); see also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996) (noting that federal constitutional doctrine is determinative with respect to personal jurisdiction over non-residents in Pennsylvania).  The purpose of requiring such minimum contacts is to provide "fair warning" to a non-resident as to the possibility of being subject to suit in a foreign jurisdiction.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)).  In light of this underlying purpose, the Supreme Court has instructed that "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 109 (1987) (quoting Burger King, 471 U.S. at 475).

Consistent with these principles of due process, this Court may exercise personal jurisdiction over a non-resident under two independent theories: (1) general jurisdiction; and (2) specific jurisdiction.  General jurisdiction requires a party to

litigate in a forum state regardless of whether the defendant's contacts with the forum state relate to the underlying cause of action.  <u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 414 (1984); <u>Mellon Bank</u>, 960 F.2d at 1221.  Since general jurisdiction may be invoked when the cause of action arises from a defendant's non-forum related activities, the contacts supplying the basis for general jurisdiction must be "continuous and systematic."  <u>Helicopteros</u>, 466 U.S. at 414 n.9, 416.

In contrast, specific jurisdiction is established when the basis of the "plaintiff's claim is related to or arises out of the defendant's contacts with the forum."  <u>Pennzoil</u>, 149 F.3d at 201 (internal quotation marks and citation omitted).  A determination of specific jurisdiction necessitates the Court to conduct a three-part inquiry.  <u>D'Jamoos v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 102 (3d Cir. 2009).  First, the Court analyzes the relevant contacts with the forum to determine whether the defendant "purposefully directed [its] activities" at the forum. <u>Id.</u> (quoting <u>Burger King</u>, 471 U.S. at 472) (internal quotation marks omitted).  Second, the underlying litigation must "arise out of or relate to" at least one of those activities.  <u>Id.</u> (internal citation omitted).  If the actions of the defendant are such that he reasonably should foresee being haled into the forum's state court, then the minimum contact threshold required under the first two prongs of this inquiry is satisfied.  <u>See</u>

<u>World Wide Volkswagon Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

Finally, if a sufficient finding of minimum contacts exists based on the first two requirements, the Court may consider additional factors to determine "whether the exercise of jurisdiction otherwise comport[s] with 'fair play and substantial justice.'" <u>D'Jamoos</u>, 566 F.3d at 102 (internal quotation marks and citation omitted). The following factors are relevant to this inquiry: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." <u>Burger King</u>, 471 U.S. at 477 (citing <u>World Wide Volkswagon</u>, 444 U.S. at 292).

B.    <u>Rule 12(b)(2) Standard</u>

Federal Rule 12(b)(2) provides for dismissal due to a "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Once the jurisdictional defense has been raised, the burden shifts to plaintiff to set forth particular facts establishing a <u>prima facie</u> case of personal jurisdiction. <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324, 330 (3d Cir. 2009); <u>see also</u> <u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 496 F.3d 312, 316 (3d Cir. 2007) ("Once challenged, the plaintiff bears the burden of establishing

personal jurisdiction.") (citation omitted); Dayhoff Inc. v. H.J.
Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996) ("[O]nce a defendant
has raised a jurisdictional defense, a plaintiff bears the burden
of proving by affidavits or other competent evidence that
jurisdiction is proper.").  In order to satisfy this burden of
proof, the plaintiff must establish "jurisdictional facts through
sworn affidavits or other competent evidence. . . . [A]t no point
may a plaintiff rely on the bare pleadings alone in order to
withstand a defendant's Rule 12(b)(2) motion to dismiss for lack
of in personam jurisdiction." Patterson v. F.B.I., 893 F.2d 595,
604 (3d Cir. 1990) (internal citation omitted); see also N. Penn
Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir.
1990) (citing Stranahan Gear Co. v. NL Indus., Inc., 800 F.2d 53,
58 (3d Cir. 1986)).[2]

---

[2]     The Third Circuit has held that initially, a plaintiff
need only establish a prima facie case of personal jurisdiction
and a plaintiff is entitled to have her allegations taken as
true.  Accord O'Connor, 496 F.3d at 316; Miller Yacht Sales, Inc.
v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); see also Pinker v.
Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002) ("[I]n
reviewing a motion to dismiss under Rule 12(b)(2), we must accept
all of the plaintiff's allegations as true and construe disputed
facts in favor of the plaintiff.") (internal quotation marks and
citation omitted).  However, if an evidentiary hearing is held
the Court must then weigh the evidence offered by both parties.
Here, the Court afforded the parties an opportunity to present
evidence at an evidentiary hearing, although the parties chose to
rely solely upon affidavits and deposition testimony.  Under the
circumstances, the initial requirement that the Court accept
PMC's allegations as true is not applicable, therefore the Court
will weigh the evidence offered by both parties accordingly.

**III. ANALYSIS**

Italpasta argues that neither general nor specific jurisdiction is appropriate in this case. Italpasta further argues that even if the Court finds that jurisdiction is proper, this action should not be permitted to proceed based upon the interest of international comity due to the existence of the Canadian Litigation.

A. <u>General Jurisdiction</u>

The Third Circuit's decision in <u>Provident Nat'l Bank v. Cal. Federal Savings Loan Ass'n</u>, 819 F.2d 434 (3d Cir. 1987), is instructive in determining whether a non-resident defendant has systematic and continuous contacts with the forum to justify general jurisdiction. In <u>Provident</u>, the Third Circuit held that general jurisdiction was appropriate over a bank headquartered in California which "maintained no Pennsylvania office, employees, agents, mailing address, or telephone number," and did not advertise or pay taxes in Pennsylvania. <u>Id.</u> at 436. The court also recognized that the bank's business with Pennsylvania residents only accounted for .066% of its overall customers, .071% of its overall deposits, and .083% percent of its overall outstanding loans. <u>Id.</u> On the other hand, the defendant bank serviced depositors in Pennsylvania and maintained a "controlled disbursement account" in Pennsylvania, through which the bank's daily Pennsylvania checks were cleared. <u>Id.</u>

The Third Circuit first noted that the size of the defendant's overall business allocated directly to Pennsylvania residents is not dispositive. Id. at 438. Rather, the proper inquiry focuses on the nature of the business contacts and whether such actions are central to the defendant's business. Id. (noting that the "bread and butter" of defendant's business was borrowing and lending money). The Third Circuit pointed to the fact that the bank's controlled disbursement account encompassed daily account activity in Pennsylvania, and therefore this account activity constituted "substantial, ongoing, and systematic activity in Pennsylvania." Id. In other words, it was not the relative size of the activity, but rather the nature of the activity and the frequency with which it occurred in Pennsylvania that was critical to the Court's inquiry.

In accordance with the teaching in Provident, courts within the Third Circuit have recognized that general jurisdiction is lacking with respect to a defendant who conducts a minimal amount of business in the relevant forum and where such business activity does not qualify as a central part of the non-resident's business, i.e., the "bread and butter" of the business. See, e.g., Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 542-43 (3d Cir. 1985) (concluding that a medical school lacks continuous and substantial business relationship with Pennsylvania despite directing advertisements toward

Pennsylvania, having 6% of its students from Pennsylvania, and
conducting a joint international program with a Pennsylvania
college); Lehigh Coal and Nav. Co. v. Geko-Mayo, GmbH, 56 F.
Supp. 2d 559, 572 (E.D. Pa. 1999) (general jurisdiction did not
exist with respect to foreign company that solicited businesses
and politicians in Pennsylvania to obtain a military contract
where the contract was not an aspect of the defendant's principal
line of business and did not provide a direct source of revenue
to the defendant); Modern Mailers, Inc. v. Johnson & Quin, Inc.,
844 F. Supp. 1048, 1054 (E.D. Pa. 1994) (concluding defendant's
Pennsylvania contacts were not continuous and systematic despite
defendant having over $200,000 in direct sales to Pennsylvania
(less than .5% of total sales) and some of defendant's
salespersons soliciting sales by telephone in Pennsylvania where
such activity was not "daily or regular contact" that was
"central to the functioning of its business"); Kimball v.
Countrywide Merchant Servs., No. 04-3466, 2005 WL 318752, at *3
(E.D. Pa. Feb. 8, 2005) (finding that defendant did not have
longstanding business presence in Pennsylvania necessary to
exercise general jurisdiction where defendant had no tangible
business relationship with Pennsylvania except for sales
amounting to less than 1% of gross sales); Carson v. Saleskit
Software Corp., No. 94-3731, 1994 WL 702903, at *2 (E.D. Pa. Dec.
13, 1994) (concluding that "continuous, substantial and

systematic" contacts were lacking where defendant had a service contract by which it provided support on an "as needed" basis, defendant's employees spent a total of twenty-two days in Pennsylvania concerning the contract, and the revenues generated by the contract accounted for approximately 1% of defendant's total business); Ciolli v. Iravani, 651 F. Supp. 2d 356, 364-65 (E.D. Pa. 2009) (general jurisdiction was lacking where defendant's sales within Pennsylvania amounted to only 0.7% of its total business and were not central to defendant's business because they were internet-only sales, which represented less than 3% of its total customers); Pierce v. Hayward Indus., Inc., No. 05-5322, 2006 WL 891149, at *2 (E.D. Pa. Apr. 4, 2006) (holding that continuous and systematic contacts were not established where defendant had no other business connection to Pennsylvania other than direct sales totaling less than 1% of gross sales since there was no showing that "this small amount of business was routine and central to the defendant's business").

Here, Italpasta's sales in Pennsylvania from 2000 through 2009 represented only .76% of its total sales for that period. (Fiorelli Dec. ¶ 6.) These contacts are at best minor, and not central to Italpasta's overall business.[3] See generally

_____

[3]     Italpasta also argues, and PMC does not contest, that it operates a website that is hosted from Ontario and performs the limited purpose of providing information to customers. Italpasta notes that the website is not targeted toward Pennsylvania residents and is not commercially interactive, i.e.,

Reliance Steel Prods. v. Watson, Ess, Marshall & Enngas, 675 F.2d 587, 589 (3d Cir. 1982) (noting that the high threshold for establishing general jurisdiction requires the facts presented showing the defendant's business contacts with the forum must be "extensive and persuasive") (internal citation omitted). Therefore, they are insufficient to warrant the exercise of general jurisdiction over Italpasta.

PMC cites to the following additional business contacts in support of its argument for general jurisdiction: (1) Italpasta dealt with several suppliers and vendors in Pennsylvania;[4] (2) Italpasta hired a Pennsylvania law firm to prosecute a lawsuit on its behalf in federal court in New Jersey; (3) Italpasta's employees have made hundreds of phone calls and sent e-mails to Pennsylvania residents (including PMC's employees); (4) Italpasta's Vice-President of Sales and other

_____

customers are not able to purchase products through the website. Therefore, the mere existence of this website is not sufficient to justify imposition of general jurisdiction. See Toys "R" Us, Inc. v. Step Two S.A., 318 F.3d 446, 451 (3d Cir. 2003) (finding that a website operator must intentionally target the forum state and/or "knowingly conduct business with forum state residents via the site" in order to satisfy the specific jurisdiction requirements).

[4]     These suppliers and vendors are: (1) Alliance Shippers, Inc. (used for shipping machinery parts and returns in Pennsylvania); (2) New York Restaurant & Food Service (used for booths at trade shows); (3) Pavan US, Inc. (used to purchase repair parts for machinery); (4) Remcon Plastics Incorporated (used to purchase plastic tote containers ); (5) Toss Machine Components (used to purchase heating elements for packaging machines).

sales representatives traveled to Pennsylvania approximately three times; (5) Italpasta shipped its products to Alanric Food Distributors, in Westville, New Jersey, which were likely then sold to Pennsylvania residents; (6) Italpasta filed a state court complaint in Westmoreland County, Pennsylvania in 2009 against one of its Pennsylvania distributors. None of these contacts, however, qualify as the type of central and regular business activities which was critical to the Third Circuit's finding of general jurisdiction in <u>Provident</u>. <u>See</u> <u>Provident</u>, 819 F.2d at 438 (finding that use of bank clearing account each business day constituted daily contact that was a "continuous and central part" of the defendant's business); <u>Modern Mailers</u>, 844 F. Supp. at 1053 (noting that the <u>Provident</u> court "found to be most critical to its finding of general jurisdiction, however, was the fact that the defendant conducted business daily with the Pennsylvania bank which held its disbursement account").[5]

Therefore, the Court concludes that Italpasta has insufficient contacts with this forum to constitute the type of systematic and continuous contacts necessary to warrant the

---

[5]     The contacts relied on by PMC can best be characterized as random and sporadic. For instance, Italpasta did business with the suppliers and vendors in Pennsylvania on a handful of minor transactions, and PMC can point to only three isolated business trips to Pennsylvania by Italpasta's employees in 2003, 2006, and 2009. (<u>See</u> Gary Fiorelli Dep. 48:13-55:21, 59:15-63:2, Oct. 27, 2009.) These <u>de minimis</u> contacts do not constitute the type of regular and continuous business activity required by the <u>Provident</u> court.

exercise of general jurisdiction.

        B.    <u>Specific Jurisdiction</u>

           1.   Minimum contacts

In analyzing specific jurisdiction arising out of a breach of contract claim, the court should consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." <u>Remick v. Manfredy</u>, 238 F.3d 248, 256 (3d Cir. 2001); <u>see</u> <u>Mellon Bank</u>, 960 F.2d at 1224 (noting that a court should employ a "'highly realistic' approach [and] take into account 'prior negotiations, and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing'") (quoting <u>Burger King</u>, 471 U.S. at 479) (emphasis deleted).  The determination of whether sufficient minimum contacts exist turns on whether Italpasta's activities rise to such a level that it purposefully availed itself of the privileges of doing business in Pennsylvania, such that it should reasonably anticipate being haled into court here. <u>See</u> <u>Vetrotex</u>, 75 F.3d at 151.

Specific jurisdiction requires a direct causal connection between the contacts with the forum and the merits of the plaintiff's claim.  <u>See</u> <u>O'Connor</u>, 496 F.3d at 319-20; <u>Gen. Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 150 (3d Cir. 2001) (instructing that in analyzing specific jurisdiction in contract

-17-

cases, "courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach").  Put another way, "[s]pecific jurisdiction is the cost of enjoying the benefits" provided by the forum.  O'Connor, 496 F.3d at 323.

In Mellon Bank, the Third Circuit found specific jurisdiction existed where the defendants sought out a Pennsylvania bank to execute a loan transaction.  960 F.2d at 1223-24.  The court found that the defendants had purposefully availed themselves of the privileges of business afforded by Pennsylvania because the defendants: (1) sought out the Pennsylvania bank for the transaction; (2) were aware, or should have been aware, that they were involved with a Pennsylvania resident; (3) sent payments and correspondence concerning the loan transaction to Pennsylvania; and (4) negotiated and corresponded directly with the Pennsylvania bank.  Id. at 1223.  The defendants connections with Pennsylvania outside of this loan transaction were "virtually nonexistent."  Id. at 1224.  The court relied heavily on the fact that the non-resident defendants made the conscious decision to contact the Pennsylvania bank since the defendants had the option of seeking out financing in several different states.  Id. at 1223.  The court did acknowledge, however, that this scenario represented a "close case."  Id.

Italpasta argues that specific jurisdiction is inappropriate in this forum on the ground that it qualifies as a "passive buyer," who did not purposefully avail itself to the privileges associated with doing business in Pennsylvania. The Third Circuit addressed this issue of specific jurisdiction in the context of a passive buyer in Vetrotex, 75 F.3d 147.

Vetrotex involved two supply agreements between the same parties. Id. at 149-50. The Third Circuit held that because the defendant was merely the passive buyer of products from the forum state, the exercise of specific jurisdiction was improper. Id. at 152. In so finding, the court considered the following factors to militate against a finding of specific jurisdiction: (1) the defendant was solicited to enter into the supply agreements; (2) the defendant had no personnel who ever visited Pennsylvania; (3) the supply agreement at issue was not executed in Pennsylvania; (4) the product sold was not shipped from, through, or to Pennsylvania; (5) the plaintiff handled all the transportation arrangements and paid the transportation costs for the product sold; and (6) the defendant's only contact with Pennsylvania consisted of some telephone calls and letters. Id. at 151-52.

The Third Circuit, however, specifically distinguished the Vetrotex case from contract cases where: (1) the "defendant solicited the contract or initiated the business relationship";

-19-

(2) the "defendant sent any payments to the plaintiff in the
forum state"; or (3) the "defendant engaged in extensive
post-sale contacts with the plaintiff in the forum state." Id.
at 152-53 (internal citations omitted).

The Third Circuit revisited the distinctions set forth
in Vetrotex in the Remick case. 238 F.3d at 256. In Remick, the
court found that specific jurisdiction was appropriate since the
circumstances fit the exceptions set forth in Vetrotex. The
defendant in Remick sought out the plaintiff to enter into a
legal fee agreement; the legal fee agreement noted that it was
subject to the Pennsylvania Rules of Professional Conduct; at
least one payment was sent by the defendant to Pennsylvania; the
services provided by the agreement were performed in
Pennsylvania; and the defendant knew, or should have known, that
the plaintiff was located in Philadelphia. Id. at 256. The
court further noted that there were extensive communications
between the parties in furtherance of performance of the
agreement, and that these communications involved "more
entangling contacts than [] mere informational communications."
Id.

Ordinarily, the first critical point to be addressed is
which party initiated the business relationship which created the
backdrop for the instant dispute. Here, Vitale, the President of
Italpasta, testified at his deposition that he was first

contacted by Streetar to initiate the business relationship and that he had no knowledge that Minot (through PMC) was a Pennsylvania company. (Joseph Vitale Dep. 30:22-32:6, Oct. 27, 2009.) Vitale did testify that he learned that PMC was a Pennsylvania company several years into the business relationship. (Id. 32:11-15.) In response, PMC points to the declaration of Streetar who stated that it was Italpasta who made the initial business contact with PMC. (Streetar Dec. ¶ 7.)[6] Similarly, the parties contest which company solicited the execution of MD 1545. Given that the contradictory evidence submitted on the issue is in equipoise, the fact of who solicited whom first does not factor into the Court's calculus in this case.

Regardless of which party initiated the business relationship, Italpasta argues nonetheless that specific jurisdiction is improper because it qualifies as a passive buyer under Vetrotex. Analyzing the totality of the circumstances, however, the Court finds that this case more squarely falls within the type of case distinguished by the Third Circuit in

---

[6]    Italpasta contends that Streetar's declaration should not be accepted as competent evidence as it was not signed under oath. Rather, Streetar signed the declaration under penalty of perjury. (See Streetar Dec. 5.) A declaration signed subject to the penalty of perjury constitutes evidence to the same degree as an affidavit signed under oath. Therefore, the Court finds that the declaration constitutes competent evidence to be considered in support of PMC's contention that Vitale initiated the business relationship between the parties.

<u>Vetrotex</u>.  PMC has produced evidence that Italpasta mailed

payments directly to PMC's Philadelphia office based upon

different master order agreements, including MD 1545.  Moreover,

Italpasta does not contest that its employees contacted PMC's

employees on numerous occasions throughout the course of the

business relationship concerning billing and invoice questions.

Although the frequency of these telephone conversations cannot be

easily quantified based on the record before the Court, these

conversations rise above the level of merely informational

communications and constitute sufficient contacts with

Pennsylvania under <u>Remick</u>.  <u>See</u> <u>Remick</u>, 238 F.3d at 256

(communications between the parties, including the letter

terminating the agreement, were more than mere "informational

communications"); <u>Grand Entm't Group, Ltd. v. Star Media Sales,</u>

<u>Inc.</u>, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone

communications sent by the defendant into the forum may count

toward the minimum contacts that support jurisdiction.").

Italpasta's employees had more than <u>de minimis</u> contacts with

PMC's employees in Pennsylvania.  This factor militates in favor

of finding that Italpasta was more than a passive buyer.

        Furthermore, MD 1545 specifically provides for a

choice-of-law provision indicating that Pennsylvania law will

control any disputes.  "As <u>Burger King</u> points out, a

choice-of-law provision 'standing alone would be insufficient to

-22-

confer jurisdiction,' but combined with other factors, it may reinforce a party's 'deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'" Budget Blinds, Inc. v. White, 536 F.3d 244, 261 (3d Cir. 2008) (quoting Burger King, 471 U.S. at 482); see also Atl. Fin. Fed. v. Bruno, 698 F. Supp. 568, 573 (E.D. Pa. 1988) (choice of law provision is a "factor to show whether defendants could reasonably foresee that their acts would have effect in Pennsylvania").  The existence of this provision, coupled with the payments and communications involving Pennsylvania, certainly would have made Italpasta aware that it "'should reasonably anticipate being haled into court'" in Pennsylvania.  See Vetrotex, 75 F.3d at 151 (quoting World-Wide Volkswagen, 444 U.S. at 297); see also Asahi, 480 U.S. at 109 ("[M]inimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'") (quoting Burger King, 471 U.S. at 475).  Under these circumstances, sufficient minimum contacts exist which justify the exercise of specific jurisdiction.

2.    Fair Play and Substantial Justice

"The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations

would render jurisdiction unreasonable.'" O'Connor, 496 F.3d at 324 (quoting Burger King, 471 U.S. at 477); see also Pennzoil, 149 F.3d 197 at 207 (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); Grand Entm't Group, 988 F.2d at 483 ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). Among the factors to be considered by the Court in resolving this issue are (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the procedural and substantial interests of other nations. O'Connor, 496 F.3d at 324 (citations omitted).

Upon examination of these factors, the Court concludes that Italpasta has not met its burden of showing that the exercise of jurisdiction would be unreasonable. First, although Italpasta will be inconvenienced by having to litigate in a foreign jurisdiction, this hardship is mitigated based on the following (i) the legal systems of the United States and Canada are very similar;[7] (ii) Italpasta has litigated in this forum

_____

        [7]     Conversely, it is argued by PMC that litigating in
Canada will deprive it of the right to jury trial and the tools
of discovery available under the Federal Rules of Civil
Procedure.  While this may be so, PMC has not shown that it will
be deprived of a fair trial in Canada, or even that it will be

-24-

before based on its commencing suit against one of its suppliers in Westmoreland County, Pennsylvania; and (iii) Italpasta has already retained able local counsel.  Therefore, the influence of this factor is relatively minor as to whether the exercise of specific jurisdiction comports with "fair play" and "substantial justice."

Second, Pennsylvania's interest in this litigation is high in that PMC is a resident of Pennsylvania and therefore Pennsylvania has an interest in providing an effective form of redress to its citizens.  It is equally true, however, that Canada has a parallel governmental interest in ensuring that its domestic corporation can redress its grievances.  See id. at 324.  Therefore, this factor does not favor Italpasta's position.

Third, PMC's interest in obtaining convenient and effective relief counsels in favor of exercising specific jurisdiction.  The fact that PMC potentially has an available avenue of relief in the Canadian Litigation does not render continuation of this litigation in Pennsylvania any less convenient or effective for purposes of specific jurisdiction.[8]  The Court finds that consideration of this factor does not aid Italpasta's argument.

_____

prejudiced by having to litigate the matter in Canada.

[8]    There is no question that a Pennsylvania forum can provide timely, convenient and effective relief.

Fourth, Italpasta posits that this dispute should proceed through the Canadian Litigation since this would lead to the most efficient resolution of the controversy. Having two substantially identical cases proceed on parallel tracks in the United States and Canada is undoubtedly inefficient. As each of these cases is in a relatively identical stage of the litigation process, Italpasta cannot demonstrate that dismissal of this action, as opposed to dismissal of the Canadian Action, furthers this interest in efficiency.[9]

Based on an analysis of these factors, the Court concludes that due process is satisfied and specific jurisdiction comports with notions of fair play and substantial justice.[10]

C.    International Comity

Italpasta posits that even if personal jurisdiction is appropriate here, the Court should refrain from exercising jurisdiction on the basis of international comity in light of the

---

[9]    Although the shared interests among foreign nations is implicated in this proceeding, this factor is addressed by the Court in detail below concerning Italpasta's international comity argument. Thus, this factor does not impact the Court's specific jurisdiction analysis with respect to the "fair play" and "substantial justice" prong.

[10]    For the first time in the supplemental briefing on the personal jurisdiction issue, PMC requests a transfer to the district court of either North Dakota or Minnesota, in the alternative to dismissal for lack of personal jurisdiction. As the Court finds that the exercise of specific jurisdiction is proper, it is unnecessary for the Court to address PMC's request at this time.

pending Canadian Litigation. "International comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'" Gross v. German Found. Indus. Initiative, 456 F.3d 363, 393 (3d Cir. 2006) (quoting Hilton v. Guyot, 159 U.S. 113, 164 (1895)). Courts have discretion to dismiss a case over which it may properly exercise jurisdiction in deference to the laws of a foreign nation. See Lexington Ins. Co. v. Forrest, 263 F. Supp. 2d 986, 1003 (E.D. Pa. 2003) (citing Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the So. Dist. of Iowa, 482 U.S. 522, 543 n.27 (1987)); Paraschos v. YBM Magnex Int'l, Inc., 130 F. Supp. 2d 642, 645 (E.D. Pa. 2000) (internal citations omitted).

The Third Circuit has not directly addressed the standard for determining whether international comity necessitates dismissal in light of parallel foreign proceedings,[11] however courts are reluctant to dismiss a claim

_____

[11] The Third Circuit did address the issue of whether to extend comity to foreign bankruptcy proceedings by staying a pending case, and held "that a party seeking a stay of a judicial proceeding in this country based on a foreign bankruptcy proceeding must demonstrate the following: (1) the foreign bankruptcy court shares our policy of equal distribution of assets; and (2) the foreign law mandates the issuance or at least authorizes the request for the stay. Phila. Gear Corp. v. Phila. Gear de Mexico, S.A., 44 F.3d 187, 193 (3d Cir. 1994).

unless extraordinary circumstances exist.  See Hay Acquisition Co., I, Inc. v. Schneider, No. 04-1236, 2005 WL 1017804, at *11 (E.D. Pa. Apr. 27, 2005) (Davis, J.).[12]

Italpasta seems to concede that it would not be prejudiced if this case were to proceed in Pennsylvania. Nevertheless, it emphasizes that litigating the case elsewhere would be more convenient and efficient.[13]  It is true that continuation of the instant action and the Canadian Litigation is inefficient.  In fact, the Court itself invited the parties to consider that continuation of both of these proceedings represents a misuse of resources since these parallel cases are proceeding in alternative competent tribunals.  This inefficiency, however, is of Italpasta's making.  This is true since this matter was filed in this Court before the Canadian

---

[12]    These extraordinary circumstances include: (1) the desirability of avoiding duplicative litigation (2) the inconvenience of the domestic forum, (3) the governing law, (4) the order in which jurisdiction was obtained in each forum, (5) the relative progress of each proceeding, and (6) the contrived nature of the domestic claim.  See Lexington, 263 F. Supp. 2d at 1003 (citing Ingersoll Mill. Mach. Co. v. Granger, 833 F.2d 680, 685 (7th Cir. 1987)).

[13]    Italpasta's argument based on international comity is, in actuality, based on the doctrine of forum non conveniens. Forum non conveniens enables a court to exercise its discretion to dismiss a case on the grounds that the plaintiff's chosen forum is so inconvenient that it would be unfair to conduct the litigation in that forum.  See Am. Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994).  In light of the fact that Italpasta has not demonstrated an inability, whether financial or otherwise, to proceed in this forum, the Court refuses to address the forum non conveniens issue.

Litigation began.[14]  Having created the inefficiency, Italpasta cannot be heard to complain that this Court should yield to the foreign court in the absence of extraordinary circumstances.

Based on the absence of some "extraordinary circumstance" warranting deference to the interest of international comity, the Court concludes that dismissal on this ground is inappropriate.  See Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 75 (3d Cir. 1994) (stating that "principles of comity cannot compel a domestic court to uphold foreign interests at the expense of the public policies of the forum state").

## IV.  CONCLUSION

For the reasons set forth above, the Court concludes that the exercise of specific jurisdiction is appropriate under the circumstances of this case.  Therefore, Italpasta's motion to dismiss will be denied.  An appropriate order follows.

---

[14]  Italpasta contends that it was not aware of the existence of the instant case at the time it filed the Canadian Litigation.  Whether it knew or did not know, does not detract from the fact that the existence of parallel forums is the result of the filing of the Canadian Litigation.

Although the present action was filed prior to the commencement of the Canadian Litigation, the "first-filed" rule is inapplicable because the Third Circuit has recognized that the "first-filed" rule does not apply when different sovereigns are involved.  See Compagnie des Bauxites de Guinea v. Ins. Co. of North Am., 651 F.2d 877, 887 n.10 (3d Cir. 1981) (internal citation omitted).